UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **WALTER P. EVERSULL, JR** | **CASE NO. 19-cv-716** |
| -vs- | **JUDGE DRELL** |
| **VALLEY FARMERS CO-OP, INC** | **MAGISTRATE JUDGE PEREZ-MONTES** |

RULING

Before the court are competing motions for summary judgment. The first is a motion for partial summary judgment filed by plaintiff Walter P. Eversull, Jr. ("Eversull") (Doc. 30) and the second is a motion for summary judgment filed by defendant Valley Farmers Co-op, Inc. (Valley Farmers") (Doc. 31). Eversull seeks a ruling from the court finding that Valley Farmers regarded him as disabled due to a staph infection and discriminated against him on that basis. Valley Farmers seeks summary judgment asserting that there is no evidence in support of any claim of discrimination, actual or perceived, and the lawsuit should be dismissed.

I.   Background

Valley Farmers employed Eversull from December 1976 until his discharge in June 2017. During the majority of his employment Eversull drove a truck and delivered fuel to Valley Farmers' customers. Yet, near the end of his employment and up to termination, Eversull worked inside the Valley Farmers' store in Boyce, Louisiana.

In the Boyce store, Eversull was stationed at a desk located behind the sales counter where he could see customers and customers could see him. Eversull could also be seen by his manager, Powell McAlpin ("McAlpin") on closed circuit video feed.

Eversull suffered his entire life with atopic dermatitis (also known as eczema). The condition resulted in itchy skin which Eversull could not help but scratch. In addition to scratching, Eversull engaged in the habit of picking his skin. On various occasions, Eversull was caught on video footage picking skin from his hands and feet, sitting at his desk sockless, eating skin he had picked from his body and/or piling the skin onto the desk before brushing it either onto the floor or into the trash can. McAlpin, as the manager of the Valley Farmers' Boyce store, reported Eversull's conduct to Valley Farmers' General Manager, Randy Sines ("Sines"). Sines counseled Eversull on several occasions about refraining from this unsanitary and off-putting behavior.

On December 7, 2016, Eversull was hospitalized for one week to treat a staphylococcus aureus infection ("staph" or "staph infection") in his left knee. Eversull was out of work for one month to undergo surgery and obtain treatment.

Eversull returned to Valley Farmers on January 7, 2017 with a light duty work restriction per Dr. Randell, his treating orthopedist. Eversull's work restrictions prevented him from driving company vehicles and engaging in heavy lifting. Valley Farmers accommodated Eversull's request for light duty assignment by having him work in the Boyce store. Valley Farmers also accommodated Eversull by providing him time off to attend physical therapy appointments and follow up appointments with Dr. Randell.

On June 14, 2017, a customer by the name of Trevor Verzwyvelt ("Verzwyvelt") came into the store. Eversull assisted Verzwyvelt with a purchase. As shown on video footage, Eversull conducted the sales transaction while Verzwyvelt leaned casually and comfortably on the counter with his left forearm. The two held a conversation and then Verzwyvelt turned to look behind him. When Verzwyvelt turned his head, Eversull reached across the counter and swiped the back of his right hand across Verzwyvelt's left forearm. Verzwyvelt jumped backward and grimaced.

He walked to the other side of the cash register and reached across the counter to obtain hand sanitizer. He wiped his left forearm with hand sanitizer and swung his arms back and forth in an unsettled manner before Verzwyvelt wiped his arm two more times and turned to leave the store.

On or about that date, McAlpin contacted Sines to report the incident which he viewed on video. McAlpin gave an ultimatum to Sines; either discharge Eversull or he, McAlpin, would quit. Sines called Eversull and told him to go home and advised Eversull Valley Farmers would call him when he was needed.

The following day, Eversull contacted McAlpin[1] to ask what he did "that was so bad" that it warranted being terminated. During the conversation, McAlpin explained to Eversull that he was let go for setting himself up for assault charges and potentially exposing Valley Farmers to a lawsuit. When Eversull asked how his actions constituted an assault, McAlpin responded that Eversull "rubbed the back of [his] had with whatever you got on [Verzwyvelt]." (Doc. 30-2, p.6). The two then discussed whether or not he had a contagious condition (not naming any particular ailment or condition) and the conversation ended after McAlpin stated: "Well, you for real went too far there." (Doc. 30-2, p.8).

On or about August 20, 2017, Eversull filed a Charge of Discrimination ("Charge") with the Louisiana Commission on Human Rights alleging disability discrimination The Charge was presented to the Equal Employment Opportunity Commission ("EEOC") for consideration. (Doc. 31-10). Eversull alleged in the Charge that he was discharged on June 16, 2017, and although no reason for the termination was given, he believed it was based on the fact of his hospitalization in December 2016 and the resulting return to work with a restriction of light duty work. The EEOC denied the Charge and issued a right to sue letter on March 7, 2019.

---

[1] Unbeknownst to McAlpin, Eversull was recording the conversation.

3

On June 6, 2019, Eversull filed the instant lawsuit alleging disability discrimination under the American's with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*, and the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301, *et seq.* Eversull alleged he was discriminated against on the basis of an actual disability, osteoarthritis in his left knee, and based on a perceived disability that he could infect others around him.

Eversull has now filed a motion for partial summary judgment in which he argues that he is entitled to summary judgment on a "regarded as" disabled claim under 42 U.S.C. §12102(3)(A). Valley Farmers opposes Eversull's motion and has filed its own motion for summary judgment seeking dismissal of his claims for discrimination based on actual and perceived disabilities.

II.   Standard of Review

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is considered "material" in the context of the court's analysis when its existence or nonexistence affects the outcome of one or more claims under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" when the evidence would permit a reasonable fact finder to render a verdict in favor of the nonmoving party. Id.

The moving party bears its burden by supporting its motion with specific portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of any genuine dispute of material fact in the case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Anderson, 477 U.S. at 247). A defendant will meet this burden when it shows a lack of evidence to support plaintiff's claim on an issue as to which plaintiff will bear the burden of proof at trial and plaintiff is unable, in

response, to produce summary judgment evidence sufficient to sustain a finding in plaintiff's favor on the issue. James v. State Farm Mut. Auto Ins. Co., 743 F.3d 65, 68 (5th Cir.2014) (quoting Kovacic v. Villarreal, 628 F.3d 209, 212 (5th Cir.2010).

We consider "all evidence in the light most favorable to the party resisting the motion." Deshotel v. Wal-Mart Louisiana, LLC, 850 F.3d 742, 745 (5thCir. 2017); Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) (internal quotations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

III. <u>Analysis of Disability Claims</u>

The ADA defines disability as;"(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(1). In the instant case, Eversull contends he has a physical impairment (his knee condition) that substantially limits one or more major life activities and that he was regarded as having an impairment. Specifically, Eversull asserts Valley Farmers likely believed he had a staph infection in June of 2017 when he touched Verzwyvelt and that the perceived staph infection could be spread to those with whom he came into contact.

A. <u>Actual Disability</u>

In his disability discrimination claim with the EEOC, Eversull alleged he was discriminated against because he had a "knee disability" and atopic dermatitis. Eversull then filed the present complaint on June 6, 2019 (Doc. 1) in which he alleged disability because of osteoarthritis in his knee and a related knee infection. Eversull contends the impairment substantially limited one or more of his major life activities.

Valley Farmers filed its motion for summary judgment asserting all claims should be dismissed as Eversull could not establish he was a qualified individual under the ADA. Specifically, he could not point to any evidence showing his knee condition substantially limited one or more of his major life activities at the time of his termination.

As there is no direct evidence of discrimination against Eversull based upon his knee condition, the court evaluates the claim under the McDonnell Douglas[2] burden shifting analysis. "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability, was regarded as disabled or has a record of having a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." Clark v. Champion National Security, Inc., 952 F.3d 570 (5th Cir. 2020) (Citations omitted).

A "major life activity" as defined by the EEOC regulations to include:

(i) caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; and

(ii) the operation of a major bodily function, including functions of the immune system, special sense organs and skin, normal cell growth, digestive genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.

29 C.F.R. §1630.2.

One is "substantially limited" in a major life activity if he is: "(1) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under

---

[2] McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).

which the average person in the general population can perform that same major life activity." 29 C.F.R. §1630.2.

Although a plaintiff is not required to present medical evidence in support of a claim he is disabled, as defined under the ADA, he is required to provide specific, detailed evidence regarding his impairment and its effect on his disability. See 29 C.F.R.1630.2(j)(1)(v). Whether or not an impairment "substantially limits" a major life activity "is not meant to be a demanding standard," and "should not demand extensive analysis." 29 C.F.R. §1630.2(j)(1)(i)(iii).

"Neither the Supreme Court nor [the Fifth Circuit] has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies." Griffin v. United Parcel Service, Inc., 661 F.3d 216, 223 (5th Cir.2011). In determining whether an impairment is substantially limiting, courts consider "(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment, and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Hale v. King, 642 F.3d 492, 500 (5th Cir.2011).

Eversull's only complaint of limitation because of his knee was that he could not drive company vehicles and/or do any heavy lifting. He did not and does not argue that these limitations adversely affected his ability to perform major life activities. Rather, he intimates that they were inconveniences from the stand point of performing his usual work at Valley Farmers. Eversull has acknowledged he was still able to attend work and perform the light duties assigned to him upon his return. The same is true with respect to the restriction on heavy lifting. Eversull also testified in his deposition that he returned to driving shortly after his discharge.

As we find no record evidence to support a finding that Eversull was substantially limited in one or more major life activities because he was unable to drive and/or because of his osteoarthritis, we do not find him to have an actual disability. As Eversull has not nor can he establish a *prima facie* case of actual disability because of his knee condition, his claim for actual disability should be dismissed.

B. "Regarded as Disabled"

Eversull's next argument is that Valley Farmers regarded him as disabled because they believed his atopic dermatitis was a contagious staph infection.

a. Whether Eversull exhausted his administrative remedies

Valley Farmers points out that Eversull did not raise his "regarded as" disabled claim with the EEOC. As a result, they say he did not exhaust his administrative remedies and his claim should be dismissed. We disagree.

When determining whether one has exhausted his administrative remedies with the EEOC, "we do not require that a Title-VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency." Pacheco v. Mineta, 448 F3d 783, 792 (5th Cir. 2006) citing Sanchez .v Standard Brands, Inc., 431 F.2d 455, 463-65 (5th Cir. 1970). Rather, courts ask what EEOC investigation "can reasonably be expected to grow out of the charge of discrimination." Sanchez, 431 F.2d at 466. In the instant case, we find that the EEOC could reasonably be expected to investigate a claim of "regarded as disabled" based on the charge filed by Eversull and the response provided by Valley Farmers.

Eversull alleged the following "particulars" in his EEOC charge:

> I began my employment with Valley Farmers Co-Op in December 1976, most recently working as a Gas Truck Driver and Billing Clerk earning $11.00 per hour. On June 15, 2017, Randy Sines, General Manager, called and asked me to explain what Powell McAlpin, Manager, had observed of me on the security camera from

8

> the previous day. I told Mr. Sines that Trevor (LNU), a longtime customer, and I were playing around like we have for years. During the same phone call Mr. Sines told me not to come to work the next day. One June 16, 2017, I called Mr. McAlpin and asked him about my work status. Mr. McAlpin told me they would call me if I was needed. The company discharged me on June 16, 2017. The company employs more than 15 persons.
>
> No reason was given for the actions taken against me.
>
> I believe I have been discriminated against based on my disability in violation of the Americans with Disabilities Act, as amended, in that, in December 2016, I was hospitalized and, upon my return to work on January 30, 2017, I could no longer lift anything heavy or drive the company vehicles as I had been doing for years.
>
> See attached additional pages.

(Doc. 31-10).

Eversull stated in the "attached additional pages" that he believed Valley Farmers used the hand swiping encounter between Verzwyvelt and him as a pretext for firing him.

In response to the charge, Valley Farmers explained to the EEOC that Eversull's version of events regarding the touching of Verzwyvelt was "a little more involved." (Doc. 31-13). "Mr. Eversull had actually been suffering from a staph infection and it is believed that the site of the [s]taph [i]infection [was the area] that Mr. Eversull rubbed/brushed against the arm of a customer." (Id.).

Based on the foregoing information furnished to the EEOC it is reasonable to believe that the EEOC's investigation could have reasonably delved into whether Valley Farmers regarded Eversull as disabled because it believed he was infected with staph. Accordingly, we do not find that Eversull failed to exhaust his administrative remedies with respect to his regarded as disabled claim.

9

b. Direct evidence of discrimination

Eversull contends he has direct evidence that he was regarded as disabled and discriminated against on that basis. "[D]irect evidence is rare." Clark v. Champion National Security, Inc., 952 F.3d 570, 579 (5th Cir.2020) (quoting Portis v. First National Bank of New Albany, 34 F.3d 325, 328 (5th Cir.1994)). Direct evidence is that "which if believed, proves the fact without inference or presumption." Id. (quoting Brown v. E. Miss. Elec. Power Ass'n., 989 F.2d 858, 861 (5th Cir.1993)). "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." Herster v. Board of Supervisors of La. State Univ., 887 F.3d 177, 185 (5th Cir.2018) (quoting Portis v. First National Bank of New Albany, 34 F.3d 325, 328 (5th Cir.1994)). "A statement or document which shows 'on its face that an improper criterion served as a basis – not necessarily the sole basis, but basis – for the adverse employment action [is] direct evidence of discrimination.'" Id. (quoting Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 993 (5th Cir.2005)).

However, "[w]here a plaintiff offers remarks as direct evidence, we apply a four-part test to determine whether they are sufficient to overcome summary judgment evidence." Champion, 952 F.3d at 581 (citations omitted). "To qualify as direct evidence of discrimination, workplace comments must be: 1) related [to the protected class of persons of which plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." Id. (citations omitted).

Eversull's purported direct evidence is a recorded conversation between Eversull and McAlpin that took place a day or two after his termination. During the conversation, the two discussed Sines' decision to discharge Eversull. Although the conversation related to Eversull's

being believed to have a contagious condition, took place within a day or two of Eversull's dismissal, and was related to Sines' decision to discharge Eversull, the comments were not "made by an individual with authority over the employment decision at issue." Deposition testimony of Sines and Eversull establishes it was Sines who made the decision to discharge Eversull. As, this conversation did not involve Sines, it does not meet the Champion criteria and, thus, cannot constitute direct evidence of discrimination.

    c. Transitory and minor defense

Valley Farmers contends that Eversull's "regarded as" disabled claim should be dismissed because his perceived disability, a staph infection, was transitory and minor. Although 42 U.S.C. §12102(3)(B) defines a "transitory impairment" as one "with an actual or expected duration of 6 months or less," neither the statutes nor case law clearly define "minor."

Valley Farmers argues that whether a perceived impairment is transitory and minor depends upon an objective determination. We agree. However, Valley Farmers has not provided the court with objective evidence that the perceived impairment was in fact transitory and minor.

Valley Farmers is persistent in its argument that Eversull's actual staph infection resolved in less than six months; thus, it was transitory.[3] However, that is not the inquiry. As explained in detail in Mesa v. City of San Antonio, 2018 WL 3946549 (W.D. Tx. 08/16/2018), the inquiry "is not about Plaintiff's actual impairment but the impairment perceived by his employer." Id. at *14 (quoting Davis v. Vt. Dept. of Corrections, 868 F.Supp.2d 313, 326 (D. Vt. Dept. 2012); other citations omitted). "The proper inquiry is whether, at the time of the adverse action, [Valley

---

[3] Even if the court were to objectively determine if the actual infection in December and January was transitory and minor, we would not be able to do so. While we agree that infection was transitory, there is no evidence in the record establishing that it was minor.

Farmers] perceived [Eversull] to have a physical impairment [(a staph infection)] that, viewed objectively, would be transitory and minor." Id. at 15.

The fact that the staph infection Eversull had in December resolved within six months is not necessarily the answer to the question. Not all staph infections are the same. Some are more severe than others and they are of differing durations. Accordingly, we cannot say with certainty, given the evidence before the court (or lack thereof) that the perceived staph infection was transitory and minor.[4]

Even if the court were to accept that the perceived staph infection was transitory because Eversull's actual staph infection resolved within 6 months, there is nothing more than Valley Farmers' conclusory statement to evidence that the perceived staph infection was "minor." Without evidence establishing the nature of staph as minor, there is no basis upon which to grant Valley Farmers' motion for summary judgment. The evidence is likely to be medical in nature and we do not have such in this record.

  d. Prima facie case of discrimination

Although there is no direct evidence that Valley Farmers regarded Eversull as disabled, we still evaluate whether Eversull can establish a *prima facie* case using the aforementioned McDonnell Douglas factors: whether (1) he was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his perceived disability. See Cannon v. Jacobs Field Servs. N.A., Inc., 813 F.3d 586, 590 (5th Cir. 2016). We find, based on Valley Farmers' response to the EEOC Charge and the recorded conversation between McAlpin and Eversull, that Valley Farmers regarded Eversull as disabled. As this

---

[4] There is neither medical evidence nor case law which establishes that a staph infection should generally be considered transitory and minor.

showing has been made, a presumption of discrimination arises. Valley Farmers must now rebut the presumption with a "legitimate non-discriminatory reason for the adverse employment action." Id.

Valley Farmers asserts that "[Eversull] was discharged for outrageous, unhealthy and unsanitary conduct which continued despite two years of warnings from Valley Farmers Co-Op, Inc." (Doc. 36, p.6) (citing Doc. 31-13). There is record evidence establishing that Eversull was warned to quit picking his skin, quit sitting shoeless, quit eating his skin and/or piling dead skin on his desk. Valley Farmers argues the conduct continued despite the warnings and culminated in the unnecessary and unwanted touching of a customer. Thus, Valley Farmers has articulated a "legitimate non-discriminatory reason" for Eversull's discharge. Accordingly, the burden shifts back to Eversull to show that the reason advanced is pretextual. Id.

Eversull argues the touching of Verzwyvelt was unrelated to the warnings not to pick or eat his skin. He argues that the warnings to refrain from picking and eating his skin were not in close proximity to his discharge. He further avers that he did heed Valley Farmers' warnings because the last time he was caught on video engaging in that conduct with months before his termination. To resolve the question of whether or not the reason raised was a pretext would require the court to weigh the evidence and make a judgment call. As that is outside of our purview when considering a motion for summary judgment, we find that neither party is entitled to judgment in their favor with respect to Eversull's regarded as disabled claim. Determination of that issue will have to await further proceedings.

C. Age Discrimination

Valley Farmers makes mention of an age discrimination claim; however, we do not find Eversull mentioned or alleged age discrimination to either the EEOC or this court in his complaints. Accordingly, this argument is denied as moot.

IV. Conclusion

In light of the foregoing, both Eversull's partial motion for summary judgment will be denied and Valley Farmers' motion for summary judgment will be granted in part and denied. The court will issue a judgment in conformity with these finding.

THUS DONE AND SIGNED this 9th day of August 2021, at Alexandria, Louisiana.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **WALTER P. EVERSULL, JR** | **CASE NO. 19-cv-716** |
| -vs- | |
| **VALLEY FARMERS CO-OP, INC** | **JUDGE DEE D. DRELL**<br>**MAGISTRATE JUDGE PEREZ-MONTES** |

**JUDGMENT**

For the reasons expressed in the court's memorandum ruling also issued this day, it is hereby

**ORDERED** that Walter P. Eversull Jr.'s motion for partial summary judgment (Doc. 30) is hereby **DENIED**. It is further

**ORDERED** that Valley Farmers Co-op, Inc.'s motion for summary judgment (Doc. 31) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's claim for actual disability discrimination is **DISMISSED with prejudice**. The "regarded as" disabled claim remains before the court.

THUS DONE AND SIGNED this 9th day of August 2021, at Alexandria, Louisiana.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT
